UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KIMBERLY LISBOA, et al., | ) | CASE NO. 1:12CV2805 |
| | ) | |
| Plaintiffs, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| CITY OF CLEVELAND HTS., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon the Motion (ECF DKT #10) of Defendants, City of Cleveland Heights and Jeffrey E. Robertson, for Judgment on the Pleadings, and the Motion (ECF DKT #7) of Plaintiffs, Kimberly Lisboa and KIMLSB, LLC., for Partial Judgment on the Pleadings.  For the following reasons, Defendant's Motion is granted.  In light of that, the Court denies Plaintiffs' Motion for Partial Judgment on the Pleadings (ECF DKT #7).

**I.  BACKGROUND**

The relevant facts and procedural history are as follows.  On July 22, 2011, Plaintiffs opened a nightclub named MYXX at 12459 Cedar Road, Cleveland Heights, Ohio.  Plaintiffs

operated and managed MYXX.

On June 17, 2012, the City of Cleveland Heights Law Director determined that MYXX was a public nuisance.

On June 29, 2012, Plaintiffs and City officials met to discuss the situation.  The parties reached an agreement regarding the future of MYXX and its operations.  The terms of the agreement were sent to the Law Director from the Plaintiffs' attorney.

On August 3, 2012, the Ohio Department of Liquor Control did an investigative sweep of the property and issued seven citations for underage drinking.

On August 6, 2012, the Cleveland Heights City Council passed Resolution No. 120-2012, which declared the operation of MYXX to be a public nuisance, and allowed the City Manager and Law director to "abate[] [the nuisance] in accordance with Chapter 553 of the Codified Ordinances of the City of Cleveland Heights, Ohio or in any manner determined by them to be appropriate and in accordance with the law."

On August 26, 2012, a large number of inebriated MYXX patrons emptied onto Cedar Road at approximately 2:30 a.m..  The large crowd resulted in many calls to the Cleveland Heights Police Department regarding the disturbance.

On August 30, 2012, the City of Cleveland Heights filed Case No. CV 12 790445, in Cuyahoga County Common Pleas Court, for a restraining order and preliminary and permanent injunction against Plaintiffs.

On the same day, Plaintiffs filed a Complaint for an injunction action against the City.  The case was assigned to Judge Daniel Gaul.  The Complaint sought an injunction against the City, alleging false allegations, racially discriminatory police enforcement, non-compliance

with state and local laws, and harm to Plaintiffs.

On August 30, the parties were heard by Judge Nancy Fuerst. At the meeting, Plaintiffs agreed to limit the operation of Plaintiff's business until a hearing with Judge Gaul could be set.

On September 12, 2012, at a second meeting with Judge Gaul, the parties reached a final agreement regarding the operation of MYXX. In addition to continuing most of the restrictions that the parties had agreed upon earlier, the agreement provided that MYXX would "cease operations on or by October 1, 2012." The agreement was approved by Judge Gaul, who signed the Order on that date.

On November 9, 2012, Plaintiffs filed the instant case in the Northern District of Ohio. In Count One, Plaintiffs allege a denial of Due Process of Law because the injunction filed by Defendant "directly and proximately caused [Plaintiffs] to close MYXX which was a deprivation of property." In Count Two, Plaintiffs allege a denial of Equal Protection, stating that Defendant "has not treated [Plaintiffs] equally," that "[t]here is no rational basis for [the City] to have declared MYXX to be a nuisance," and due to "MYXX's clientele being black, [was] motivated by animus and ill-will in [its] conduct toward MYXX."

## II. LAW AND ANALYSIS

### Civil Rule 12(c) Standard

Rule 12(c) of the Federal Rules of Civil Procedure states that "[a]fter the pleadings are closed— but early enough not to delay trial— a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). When a motion for judgment on the pleadings is filed, "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true,

and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir. 2008), quoting *JP Morgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). "A motion brought pursuant to 12(c) is appropriately granted 'when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Id.* To survive dismissal, the non-moving party "must allege facts that, if accepted as true, are sufficient 'to raise a right to relief above the speculative level' and must state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombley*, 550 U.S. 554, 555 (2007).

**Doctrine of Res Judicata**

The purpose of *res judicata* is to ensure that decisions made by the Court are final. *See Brown v. Felsen*, 442 U.S. 127 (1979). *Res judicata* applies where "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Id.*, citing *Montana v. United States*, 440 U.S. 147, 153 (1979). The doctrine "prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined during the prior proceeding." *Brown*, 442 U.S. at 131, citing *Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371 (1940). *Res judicata* functions as a type of judicial expediency, "encourag[ing] reliance on judicial decisions, [barring] vexatious litigation, and [freeing] the courts to resolve other disputes." *Id.* at 131.

Although in this case the prior action was filed in state court, the doctrine of *res judicata* is still applicable to a subsequent action in federal court. The doctrine of *res judicata* demands "that federal courts must give state court judgements the same effect the rendering

state court would give them." *Hutcherson v. Lauderdale County, Tennessee*, 326 F.3d 747, 755 (6th Cir. 2003), citing 28 U.S.C.A. § 1738. As such, if a state court has made a final judgment under which another state court would dismiss the claim for *res judicata*, a federal court also recognizes the application of *res judicata* in a case that meets all four elements.

For *res judicata* to apply to the instant case, four elements must exist: "(1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action." *Doe ex rel. Doe v. Jackson Local Schools Dist.*, 422 Fed. Appx. 497, 501 (6th Cir. 2011), citing *Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997). The final two elements are often addressed together. *See Hivner v. Active Electric, Inc.*, 878 F. Supp. 2d 897 (S.D. Ohio 2012) (addressing third and fourth element of *res judicata* simultaneously because both are based on the original transaction).

A final decision on the merits is required for a claim to be barred by *res judicata*, but precedent does not require litigation. *See Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565 (6th Cir. 2008). A consent judgment operates in much the same way as a litigated result. The general rule applied in the Sixth Circuit regarding consent judgments is that "in the absence of fraud, consent judgments are, as between the parties, to be given preclusive effect with respect to the underlying cause of action." *In re Siebert*, 302 B.R. 265, 266 (N.D. Ohio 2003), citing *Amalgamated Sugar v. NL Industries*, 825 F.2d 634, 640 (2d Cir. 1987). "The Supreme Court of Ohio has also given preclusive effect to consent judgments." *In re Siebert*,

302 B.R. at 266, citing *Horne v. Woolever*, 170 Ohio St. 178 (1959); *see also Sponseller v. Sponseller*, 110 Ohio St. 395 (1924). Ohio Courts recognize that "a judgment entered by consent, although predicated upon an agreement between the parties, is an adjudication as effective as if the merits had been litigated and remains, therefore, just as enforceable as any other validly entered judgment." *In re Gilbraith*, 32 Ohio St. 3d 127, 129 (1987), citing *Sponseller*, 110 Ohio St. at 399.

The agreement, entered into by the parties and approved by Judge Gaul, is a consent judgment given preclusive effect, thus barring further litigation on the topics agreed upon. It is undisputed that there was an agreement between the parties to discontinue the operation of MYXX. Additionally, the state court journal entry recites that the parties reached a final agreement on September 12, 2012, which provided that MYXX discontinue operations. Judge Gaul approved of the agreement and signed the Order on September 12, 2012. Because both parties agreed and the agreement was accompanied by a signed order, the agreement operates as a consent judgment. As such, the agreement has preclusive effect and qualifies as a "final decision on the merits." Public policy bars relitigation.

The action in the instant case must also involve the same parties or their privies that were subject to the final judgment. In a claim for *res judicata*, the term 'privity' refers to "a successor in interest to the party, one who controlled the earlier action, or one whose interests were adequately represented." *Sanders Confectionary Products, Inc. v. Heller Financial, Inc.*, 973 F.2d 474, 481 (6th Cir. 1992), citing *Latham v. Wells Fargo Bank, N.A.*, 896 F.2d 979 (5th Cir. 1990).

The Supreme Court of Ohio has stated that the subsequent action is not shielded from

the application of *res judicata* simply because the parties have named an additional party in his individual capacity. "Res judicata is applied where the defendants are sued in both capacities if the alleged impropriety stems solely from acts performed in the defendant's official capacity." *Kirkhart v. Keiper*, 101 Ohio St. 3d 377 (2004). Actions are taken in the parties' official duties if the acts were taken, and could only have been taken, "in the exercise of their official duties and responsibilities as [a public official]." *Id*. at 380. The policy reasoning behind the expansive view of *res judicata* is so that "a party cannot escape the rule of *res judicata* through expansive pleading." *Kirkhart*, 101 Ohio St.3d at 380.

The instant case involves the same parties as the original action, with one addition: Plaintiffs have named an additional Defendant, Cleveland Heights Police Chief Jeffrey Robertson. However, while named as an additional defendant, Robertson has been sued in his individual capacity without alleging improper acts separate from acts performed in his official duty. Plaintiffs state that the equal protection claim stemmed from a statement that Robertson made during a meeting regarding MYXX as a nuisance. During the meeting, Plaintiff stated that she asked what was wrong with her customers and Robertson replied: "They are all black." This statement was made during a meeting between Plaintiff and Robertson, in his official capacity as Chief of the Cleveland Heights Police Department. As such, the addition of Robertson to the existing parties does not alter the fact that the parties to the instant case are the same as those in the Common Pleas Court litigation. Plaintiffs cannot shield themselves from *res judicata* in this case because the same parties and their privies were involved in the original Common Pleas action.

Next, the causes of action in the instant case were the same ones litigated, or that

should have been litigated, in the original action. "[W]here the two causes of action arise from the 'same transaction or series of transactions,' a plaintiff should have litigated both causes in the first action and may not litigate the second issue later." *Holder v. City of Cleveland*, 287 F. App'x 468, 471 (6th Cir. 2008), citing *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 529 (6th Cir. 2006). Identity of causes of action means an "identity of the facts creating the right of action and of the evidence necessary to sustain each action." *Sanders*, 973 F.2d at 484. It is well-established that where the two causes of action arise from the same transaction, then "both causes should be litigated in the first action." *Hivner v. Active Electric, Inc.*, 878 F. Supp.2d 897, 904 (S.D. Ohio 2012), citing *Rawe*, *supra* (holding *res judicata* applied where theories of recovery were based on the same transaction and events as the first action). A final judgment "[extinguishes] . . . all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction or series of connected transactions." *Grava v. Parkman Twp.*, 73 Ohio St. 3d 379, 382 (1995).

A transaction is "a common nucleus of operative facts." *Grava*, 73 Ohio St. 3d. at 382. "Although the several legal theories depend on different shadings of the facts or would emphasize different elements of the facts, or would call for different measures of liability or different kinds of relief," that does not preclude the second claim being barred by *res judicata*. *Grava*, 73 Ohio St. 3d. at 382. In order to not be barred by *res judicata*, the new cause of action must have arisen "from entirely separate and discrete events and wrongful acts by the defendant." *Rawe*, 462 F.3d at 529.

The Supreme Court of Ohio has held that the bar on relitigation applies even in cases where the plaintiff is presenting evidence or theories not presented in the original action or is

seeking remedies not demanded in the first action. *Grava*, 73 Ohio St. 3d. at 383.

Here, the causes of action filed in the Court of Common Pleas and in the instant case stem from the same nucleus of operative facts. All of the issues from this case arise from the nuisance created by MYXX and the ensuing injunction. Although in this action Plaintiffs added additional facts to posit their claims for violations of due process and equal protection, these facts stem from the same factual basis: the Defendant's declaring MYXX a nuisance and the resulting injunction. As such, the instant case involves the same transaction as the Common Pleas case and *res judicata* bars relitigating in Federal Court.

### III.  CONCLUSION

For these reasons, the Defendant's Motion for Judgment on the Pleadings is granted under the doctrine of *res judicata*. As a result, Plaintiffs' Complaint is dismissed and Plaintiff's Motion for Partial Judgment on the Pleadings is denied.

**IT IS SO ORDERED.**

                                        **s/ Christopher A. Boyko**
                                        **CHRISTOPHER A. BOYKO**
                                        **United States District Judge**

**Dated:  September 13, 2013**